UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REBECCA FLORES, | ) |
| | ) No. 14 CV 7905 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| BOARD OF TRUSTEES OF | ) |
| COMMUNITY COLLEGE DISTRICT | ) |
| NO. 508, d/b/a CITY COLLEGES OF | ) |
| CHICAGO KENNEDY KING | ) |
| COLLEGE, | ) |
| | ) May 6, 2015 |
| Defendant. | ) |

## MEMORANDUM OPINION and ORDER

Plaintiff Rebecca Flores brings this suit against Defendant Board of Trustees of Community College District No. 508 ("City Colleges"), alleging violations of the Illinois Human Rights Act ("IHRA") and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* Flores alleges in part that City Colleges unlawfully retaliated against her because she sought accommodation for her disability (Asperger's Syndrome). Before the court is City Colleges' motion to dismiss Flores's retaliation claims and to strike all retaliation related allegations in the amended complaint. For the following reasons, City Colleges' motion to dismiss a portion of the amended complaint and to strike certain allegations is denied:

## Facts

Taking Flores's allegations as true for purposes of this motion, City Colleges hired Flores as Dean of Instruction in 2012. (R. 18, Am. Compl. ¶ 9.) The following

year, in January 2013, City Colleges hired Erica Holmes as the Vice President of Instruction and direct supervisor to Flores. (Id. ¶ 11.) According to Flores, Holmes has an "extremely difficult personality," resulting in Flores being put under "unnecessary, improper and unwarranted stress, thereby triggering various effects from her Asperger's Syndrome." (Id. ¶ 2.) For example, on January 16, 2013, Flores "suffered a major incident relating to her condition," causing her to seek assistance from a counselor with her employer's Wellness Center. (Id. ¶ 11.)

As early as January 22, 2013, Flores informed City Colleges "of the unwarranted stress she had been put under, her condition, and her need for accommodation, needing time off to obtain proper psychological care." (Id. ¶ 3; see also ¶¶ 12-13.) Shortly thereafter, Holmes allegedly "launched a series of attacks on Flores." (Id.) For example, Flores alleges that from January 29 through January 31, 2013, Holmes "chastised" her for an alleged breach of protocol, questioned Flores's ability to continue to serve as a Dean, made a "caustic remark" to Flores regarding her tardiness to a meeting, attacked Flores for taking time off to attend to her medical condition, accused Flores of misconduct in a meeting, and scheduled a "behavioral standards in the workplace" meeting with Flores. (Id. ¶ 16.)

On February 6, 2013, during her time off for psychological care, Flores delivered a letter to the Human Resources Director setting forth her diagnoses of Adjustment Disorder with Anxiety and Asperger's Disorder. (Id. ¶ 18.) The letter requested accommodations "to assist Flores in the performance of her job." (Id.) When Flores returned to work on February 11, 2013, she discovered that Holmes

2

had scheduled several *ad hoc* meetings, without agendas, in contravention of the requested accommodations. (Id. ¶ 20.) The following day, Flores spoke with the District EEO Officer regarding the requested accommodations and Holmes's "threaten[ing] and humiliat[ing]" conduct toward Flores. (Id. ¶ 22.) On February 15, 2013, Holmes emailed Flores, complaining about what she characterized as Flores's "excessive absences" from work. (Id. ¶ 23.) Flores responded that she found Holmes's approach to be "hostile and intimidating and completely inconsistent with [Flores's] recent diagnosis." (Id. ¶ 24.) Flores further complained about her "total disregard for . . . the accommodations I am requesting and need." (Id. ¶ 24.)

On February 18, 2013, Flores resigned from City Colleges. (Id. ¶ 26.) Flores expressed in her resignation letter that she "found herself frustrated, fearful, intimidated and inexorably stressed at the continued hostility generated by the words and actions of [Vice President] Holmes." (Id.) Flores further noted that Holmes had "not only disregarded nine of the thirteen documented requests in this past week alone, but ha[d] appeared to retaliate against [Flores] for having made them in the first place." (R. 28-1(C), Pl.'s Resp., Resignation Ltr.)

## Procedural History

Flores, proceeding *pro se*, filed a charge with the Illinois Department of Human Rights ("IDHR") on April 8, 2013. (R. 24-1, Def.'s Mot., IDHR Charge[1];

---

[1] Flores cross filed her charge and accompanying materials with the EEOC. (R. 24, Def.'s Mot. at 3; R. 28, Pl.'s Resp. at 3.) For the sake of simplicity, the court refers

3

R. 28, Pl.'s Resp. at 1.) The charge sets forth two claims: (1) failure to accommodate her disability; and (2) constructive discharge based on the failure to accommodate. (R. 24-1, Def.'s Mot.) The charge does not mention "retaliation." (Id.) On the same day that Flores filed her IDHR charge, she submitted an IDHR intake form, (R. 28-1(A), Pl.'s Resp.), and attachments, including the following:

- Flores's "Issue, Basis and Allegation of Discrimination," (R. 28-1(B), Pl.'s Resp.);

- February 18, 2013 resignation letter from Flores to Dr. Joyce Ester, President of Kennedy-King College ("KKC"), (R. 28-1(C), Pl.'s Resp.);

- Flores's timeline of events, (R. 28-1(D), Pl.'s Resp.); and

- February 6, 2013 letter from Flores to Araceli Cabrales-Medina, the Human Resources Director of KKC, (R. 28-1(E), Pl.'s Resp.).

The IDHR issued a Notice of Dismissal on July 16, 2014. (R. 24-2, Def.'s Mot., IDHR Notice of Dismissal.) Thereafter, Flores filed this lawsuit, and the parties consented to this court's jurisdiction. See 28 U.S.C. § 636(c); (R. 12).

## Analysis

### A.  Count II

Flores argues that City Colleges' motion should be treated as a Rule 12(c) motion for judgment on the pleadings with respect to Count II (retaliation claim under the IHRA) because it filed an answer to that count in response to her original complaint. (R. 16, Ans. at 14-15.) In her amended complaint, Flores changed Defendant's name and added Counts III and IV (ADA claims). (R. 18, Am. Compl.

---

only to the IDHR charge and materials accompanying the charge. (R. 28, Pl.'s Resp. at 3.)

4

at 1, ¶¶ 39-44.) Subsequently, City Colleges filed the present motion to dismiss Counts II and IV of the amended complaint. (R. 24, Def.'s Mot. at 1.) Accordingly, Flores correctly asserts that City Colleges' Rule 12(b)(6) motion should be treated as a Rule 12(c) motion as to Count II. *See McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 757 n.1 (7th Cir. 2006). But because the court evaluates a Rule 12(c) motion under "the same standard as a Rule 12(b)(6) motion," *id.*; *see also Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 470 n.2 (7th Cir. 1997), the court refers to the present motion as styled by City Colleges as a Rule 12(b)(6) motion.

## B. Exhibits

In briefing the instant motion to dismiss, both parties attached to their briefs and referred to documents that are not attached to the amended complaint, without analyzing the propriety of such actions.[2] (See R. 24, Def.'s Mot. at 3-4 nn. 2-3; R. 28, Pl.'s Resp. at 2 n.2.) City Colleges attached Flores's IDHR charge and the IDHR dismissal notice and investigation report. (R. 24-1, 2, Def.'s Mot.) Flores attached documents that she, proceeding *pro se* at the time, submitted to the IDHR at the time of intake and on the same day she submitted her charge. (R. 28-1(A)-(E), Pl.'s Resp. at 2-3.)

Typically, motions to dismiss brought under Rule 12(b)(6) cannot include materials outside the pleadings. *See McCready v. eBay*, 453 F.3d 882, 891 (7th Cir.

---

[2] The parties did not address this procedural issue in the bodies of their opening or response briefs. City Colleges discussed this issue in its reply, defending its use of Rule 12(b)(6) to attach its Exhibits 1 and 2 to its motion while at the same time citing Rule 12(b)(6) as a bar to preclude Flores from attaching Exhibits 1(A)-(E) to her response. (R. 32, Def.'s Mot. at 3-5 & n.2.)

5

2006). Under Rule 12(b), where "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Wright v. Assoc. Ins. Co.*, 29 F.3d 1244, 1248 (7th Cir. 1994). A "narrow exception" to this general rule permits "documents attached to a motion to dismiss [to be] considered part of the pleadings if they are referred to in the plaintiff's complaint and are *central* to [the plaintiff's] claim." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (emphasis in original).

City Colleges' first exhibit, the IDHR charge, falls within this "narrow exception" permitting the document to be considered. *See Levenstein*, 164 F.3d at 347. Flores referred to the IDHR charge in her amended complaint. (R. 18, Am. Compl. ¶ 30 ("Plaintiff timely filed a charge of discrimination with the relevant agencies.").) The charge is also central to determining the proper scope of Flores's claims. *See Whitehead v. AM Int'l, Inc.*, 860 F. Supp. 1280, 1286 n.5 (N.D. Ill. 1994) ("A Rule 12(b)(6) motion typically focuses on the four-corners of the complaint to determine whether the complaint states a cause of action. To determine the proper scope of Whitehead's Title VII complaint, however, the court must consider the accusations made in the EEOC charge."). Furthermore, the IDHR charge is a public document and, therefore, the court may take judicial notice of the charge. *See Pierce v. Ill. Dep't of Human Servs.*, 128 F. Appx. 534, 535 (7th Cir. 2005) (finding no error where the district court, in deciding a motion to dismiss, considered

"numerous documents . . . submitted by the parties from the administrative process" that were not attached to the pleadings because they were "public records"); *Ocampo v. Remedial Envtl. Manpower, Inc.*, No. 13 CV 6283, 2014 WL 2893190, at *2 (N.D. Ill. June 26, 2014) ("When presented with a motion to dismiss, the Court may 'take judicial notice of matters of public record.'") (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)).

In contrast, City Colleges' second exhibit, the IDHR dismissal notice and investigation report, do not fall within the "narrow exception" and will not be considered. See *Levenstein*, 164 F.3d at 347. Flores referred to the IDHR dismissal—but not to the investigation report—in her amended complaint. (R. 18, Am. Compl. ¶ 31 ("The [IDHR] issued a Dismissal and Notice of Rights letter on July 16, 2014.").) Regardless, neither the IDHR dismissal nor the investigation report is central to the scope of the determination in this case because Flores provided detailed allegations to the IDHR at the time of intake. (R. 28-1(A)-(E), Pl.'s Mot. at 3.) The court therefore need not rely upon the IDHR findings or investigation to determine the scope of Flores's claims. Although both documents in City Colleges' second exhibit are public records, the court declines to take judicial notice of them given that they are not relevant to the issues presented in the motion to dismiss.

City Colleges argues that the relevance of the IDHR's findings is "not what the IDHR found but what the IDHR did not even consider." (R. 32, Pl.'s Reply at 10.) City Colleges cites *Gresham-Walls v. Brown*, No. 12 CV 1344, 2012 WL

7

3581634, at *8 (N.D. Ill. Aug. 17, 2012), for support. (R. 32, Pl.'s Reply at 4.) But in *Gresham* the court relied upon the IDHR charge and investigation report because the plaintiff's complaint lacked clarity as to the reasonable accommodation claim. *Gresham*, 2012 WL 3581634, at *3. Here, there is a clear record of the allegations that Flores made in her amended complaint and in her charge to the IDHR.

As for Flores's Exhibits 1(A)-(E), documents Flores submitted to the IDHR at the time of her charge, those documents are not attached to the amended complaint or expressly referred to therein. As a result, City Colleges seeks to preclude Flores from supplementing the partial IDHR record provided by City Colleges. (R. 32, Def.'s Reply at 5 n.2.) But Flores would be unfairly prejudiced if she were not permitted to include additional documents filed with the IDHR regarding the scope of her allegations. In contrast to the IDHR's findings and investigation report, Flores's exhibits 1(A)-(E) are directly relevant to the scope of the claims she presented to the IDHR. Because documents submitted by the parties during the administrative process are public records, the court takes judicial notice of Exhibits 1(A)-(E) solely to determine the scope of Flores's claims. *See Pierce*, 128 F. Appx. at 535-36 & n.1; *Henson*, 29 F.3d at 284.

Inclusion of materials within—or even outside—the pleadings does not automatically convert City Colleges' motion into a Rule 56 motion. Courts may consider documents within the pleadings and public records pursuant to a motion to dismiss. *See Ocampo,* 2014 WL 2893190, at *2 (considering IDHR and EEOC charges, IDHR Voluntary Withdrawal Request Form, and IDHR Order of Closure

8

without converting motion to dismiss to summary judgment motion); *Anderson v. Ctrs. for New Horizons, Inc.*, 891 F. Supp. 2d 956, 959 (N.D. Ill. 2012) (considering IDHR and EEOC charges, in addition to other IDHR records submitted by the parties, pursuant to a motion to dismiss); *Whitehead*, 860 F. Supp. at 1286 n.5 (considering EEOC charge and notice of right to sue without treating the motion to dismiss as a summary judgment motion).

Furthermore, the court has discretion in deciding whether to convert a motion to dismiss into a motion for summary judgment. *See Taleyarkhan v. Purdue Univ.*, 837 F. Supp. 2d 965, 969 (N.D. 2011) (citing *Levenstein*, 164 F.3d at 347). The court declines to do so here where neither party argued for conversion of the present motion to a Rule 56 motion. In its reply, City Colleges averred that it did not have Flores's Exhibits 1(A)-(E) when City Colleges filed its motion to dismiss. (R. 32, Def.'s Reply at 1.) Nevertheless, upon receipt of those exhibits, City Colleges did not restyle its motion as one for summary judgment. City Colleges instead defended its attachment of the IDHR records to a motion to dismiss. (Id. at 3-4.) Although Flores commented in a footnote that this court could treat City Colleges' motion as a Rule 56 motion, she provided no analysis in the body of her response. (R. 28, Pl.'s Resp. at 2 n.2.) Given that neither party appears to favor conversion, the court declines to convert City Colleges' motion to one for summary judgment.

C.  **IDHR Charge**

City Colleges argues that Flores's retaliation claims (Counts II and IV) should be dismissed for failure to exhaust her administrative remedies. (R. 24,

9

Def.'s Mot. at 1-2.) An aggrieved employee like Flores generally cannot bring claims in federal court that were not included in an EEOC (or IDHR) charge. *See Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). The exhaustion rule "serves two purposes: affording the [administrative agency] the opportunity to settle the dispute between the employee and employer, and putting the employer on notice of the charges against it." *Id.* An exception exists, however, where claims that are "like or reasonably related" to the charge "can be reasonably expected to grow out of an [agency] investigation of the charge[]." *Id.* Courts "construe the EEOC charge with 'utmost liberality' in identifying the permissible claims." *Whitehead*, 860 F. Supp. at 1287 (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985)). Moreover, discrimination claims "communicated during the course of the investigation and conciliation" may be brought in a civil complaint. *Whitehead*, 860 F. Supp. at 1287 (citing *O'Rourke v. Cont'l Cas. Co.*, 983 F.2d 94, 97 (7th Cir. 1993)).

Charges of retaliation are typically not "like or reasonably related" to charges of discrimination for purposes of the exhaustion requirement. *See Sitar*, 344 F.3d at 726. Where different claims, such as for discrimination and retaliation, are "so linked, however, where they are 'so related and intertwined in time, people, and substance,'" then a single charge may support another separate charge. *Id.* The "essential question" in the Seventh Circuit is "what EEOC [or IDHR] investigation could reasonably be expected to grow from the original complaint." *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 701 (7th Cir. 1999). Courts in this Circuit look beyond the "four corners of the EEOC charge form" when "it is clear that the

10

charging party intended the agency to investigate the allegations." *See Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000). "[S]imple technicalities such as '[w]hat boxes, for instance, are checked on the EEOC form do not necessarily control the scope of a subsequent complaint.'" *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 259 (7th Cir. 1996).

Because Flores did not include retaliation claims in her IDHR charge, (R. 24-1, Def.'s Mot.), the question for this court is whether Flores's retaliation claims reasonably could have been expected to grow out of her charge. *See Novitsky*, 196 F.3d at 701. In construing Flores's allegations, the court must use "less stringent standards than formal pleadings drafted by lawyers" because Flores represented herself when she submitted the IDHR intake form and charge. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *see also Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (finding that a *pro se* complainant need not "artfully draft the allegations in her EEOC charge"). But Flores "must at least have described, with some degree of specificity, the conduct she considered" actionable. *Cheek*, 31 F.3d at 501-02.

The facts show that Flores intended the IDHR to investigate her retaliation allegations. At the time of intake, Flores submitted to the IDHR a number of documents detailing her allegations, the parties involved, and the grounds for her complaints. (See R. 28-1(A)-(E), Pl.'s Resp.) Flores's completed intake form specifically refers to her attachments. (R. 28-1(A), Pl.'s Resp., IDHR Intake Form, Question 6 (referring to "Attached: Issue, Basis, and Prima Facie Allegations; also,

11

Timeline of Events").) Those attachments demonstrate that Flores "describe[d] the *same conduct* and implicated the *same individuals*" in her original allegations to the IDHR and her amended complaint here. *See Cheek*, 31 F.3d at 502 (emphasis in original); *see also Ammons-Lewis v. Metropolitan Water Reclamation Dist. of Greater Chi.*, 11 C 6920, 2012 WL 1802148, at *3 (N.D. Ill. May 17, 2012); (compare R. 28-1(A)-(E), Pl.'s Resp. with R. 18, Am. Compl. ¶¶ 12-16, 20-26).

To be sure, Flores's attachments show that she complained to the IDHR that she requested accommodations from her employer for her disability, a protected activity,[3] and that retaliatory actions were taken against her after her request. *See Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 200 (7th Cir. 2011); (see, e.g., R. 28-1(A)-(E), Pl.'s Resp. at 7-9). For example, Flores advised the IDHR that:

> After Respondents learned of my disability, there was a change in the way the Respondents treated me, involving an escalating series of documentation and verbal communiques that claimed alleged poor performance. These got worse with my formal notification and request for accommodations . . . . Homes [sic] took steps that were directly contrary to nine of thirteen requested accommodations.
> . . .
>
> Respondents' hostile work environment became so intolerably and irrevocably damaging to my mental and emotional health, and Respondents' failure to engage in any interactive process to address my requested accommodations, forced me to resign my position on February 18, 2013.

---

[3] City Colleges suggests that "it remains an open question in this Circuit whether requesting an accommodation is a protected activity." (R. 32, Def.'s Reply at 10.) Because City Colleges did not develop this issue in its motion, the court will assume for purposes of this motion that seeking accommodation to address one's disability is a form of protected activity.

(R. 28-1(B), Pl.'s Resp., Flores's "Issue, Basis and Allegation of Discrimination" ¶¶ 3, 7.)

Furthermore, Flores alleged in her resignation letter dated February 18, 2013, that:

> Dr. Holmes' interactions with me have been marked by her increasing hostility and aggressively critical tactics of reporting and writing-up any and all incidents relating to what she appears to perceive as my professional shortcomings, and this has worsened since I sought accommodations. Dr. Holmes has not made an attempt to even acknowledge, let alone discuss, how to implement the accommodations I have requested. On the contrary, she has not only disregarded nine of the thirteen documented requests in this past week alone, *but has appeared to retaliate against me for having made them in the first place.*

(R. 28-1(C), Pl.'s Resp., Flores's Resignation Ltr. (emphasis added).)

Additionally, in the timeline that Flores submitted to the IDHR, she described details about Holmes's allegedly hostile and retaliatory actions, including:

> January 29, 2013: I met with Dr. Holmes at her request for an *ad hoc* meeting where she chastised [sic] for setting up a prior meeting between herself and my Administrative Assistant to discuss concerns with the reorganization. Dr. Holmes informed me that the meeting was "inappropriate" . . . . I responded by saying, "I am facing a significant mental health issue right now . . . ."

> January 30, 2013: Dr. Holmes made a caustic remark to me about being sure that I am "on time" to the upcoming Chairs and Directors meeting as I had been "five minutes late" to a meeting the day prior . . . . Dr. Holmes did not chastise the Interim Associate Dean for being late.

> February 11, 2013: On returning to work, I noted that Dr. Holmes had cancelled the "behavioral standards" meeting she had previously scheduled. In its place was, throughout the day, several meetings that were unscheduled and without written agendas, and for which I felt grossly unprepared . . . .

13

> February 12, 2013: [] At the meeting with Ms. Konstopolous [District EEO Officer], we discussed my requested accommodations. I explained that I felt threatened and humiliated by Dr. Holmes and that my belief is that she was trying to discredit my work and create a justification to have me fired . . . .
>
> February 15, 2013: Dr. Holmes emailed me a .pdf letter at 11:54 a.m. with a vitriolic assessment of what she describes as "excessive absences" and, in particular, that "unauthorized absence" will not be tolerated . . . . I informed Dr. Holmes that I considered her "approach to my work and to me as hostile and intimidating, particularly given my recent diagnosis" of which she was aware, "the concomitant challenges that I face with that, and what appears to be a total disregard for any acknowledgement or good faith effort to respond to the accommodations I am requesting and need."

(R. 28-1(D), Pl.'s Resp., Timeline of Events at 2-5.)

City Colleges argues that Flores's failure to include retaliation claims in her charge frustrates the very purpose of the exhaustion requirement—to put both the employer and administrative agency on notice of the charges so that they potentially may be resolved without litigation. (*See* R. 32, Def.'s Reply at 2.) The court disagrees. Both City Colleges and the IDHR both had an opportunity to investigate and possibly resolve Flores's retaliation allegations. As to City Colleges, two of the documents that Flores submitted to the IDHR were delivered to City Colleges even before Flores brought her IDHR charge. (R. 18, Am. Compl. ¶¶ 18, 26.) One of those documents—Flores's February 18, 2013 resignation letter—expressly states that Holmes "has appeared to retaliate against me" for having requested accommodations as a result of her disability. (R. 28, Pl.'s Resp., Ex. 1(C), Flores's Resignation Ltr.) Flores also communicated with various individuals at City Colleges—including the President, HR Director, and District EEO Officer—

14

about Holmes's alleged hostility and retaliatory behavior while Flores was still employed with City Colleges. (R. 18, Am. Compl. ¶¶ 13, 21, 22, 24-26; R. 28-1(D), Pl.'s Resp., Timeline of Events at 1, 3-4.) City Colleges therefore had ample notice of Flores's retaliation allegations.

As to the IDHR, Flores submitted her detailed attachments at the time of intake and on the same day she filed her charge. (R. 28, Pl.'s Resp. at 2.) Flores did not specifically assert a retaliation claim in her charge. (R. 24-1, Def.'s Mot., IDHR Charge.) She also did not respond to Question 8(c) on the Intake Form claiming retaliation as a basis for her alleged unlawful discrimination. (R. 28-1(A), Pl.'s Resp., IDHR Intake Form.) Even so, the allegations that Flores set forth "outside the body of the charge" were sufficient to place the IDHR on notice that Flores intended the agency to investigate her retaliation claims. *See Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 865 (7th Cir. 2010) (examining plaintiff's intake questionnaire to determine scope of charge); *Cheek*, 31 F.3d at 502 (considering plaintiff's sworn affidavit and 16-page handwritten letter to determine scope of EEOC charge). As the court explained in *Williams v. County of Cook*, 969 F. Supp. 2d 1068, 1078 (N.D. Ill. 2013), even though the plaintiff did not include "race" as a ground for discrimination in her EEOC charge, it was enough that "the allegations in her narrative . . . indicate that her race discrimination claim is reasonably related to the unlawful retaliation claim." The same is true here—the claims of retaliation are reasonably related to the facts underlying Flores's disability discrimination claims.

City Colleges relies upon the Seventh Circuit's decision in *Novitsky*, 196 F.3d 699, in urging this court to find a failure to exhaust. (R. 32, Def.'s Reply at 3, 5-7.) *Novitsky* is factually distinguishable, however, because the plaintiff in that case charged wrongful termination on the basis of age and religion but did not "mention . . . or hint at" a failure to accommodate claim based upon religious practices. 196 F.3d at 701. The *Novitsky* plaintiff's EEOC intake form, but not the charge, included a religious practices episode. *Id.* at 702. Although the plaintiff claimed that "she didn't pay much attention to what she was signing and shouldn't be held to its terms," the Seventh Circuit declined to give weight to plaintiff's attempt to blame the EEOC.[4] *Id.*

Unlike in *Novitsky*, Flores's retaliation claims are based upon the same conduct and involve the same individuals underlying her discrimination charge. (Compare R. 28-1(A)-(E), Pl.'s Resp. with R. 18, Am. Compl. ¶¶ 12-16, 20-26.) Flores provided detailed documentation of those allegations to the IDHR. (R. 28-1(A)-(E), Pl.'s Resp.) Flores therefore did all that she could to present her claims to the IDHR. *See Novitsky*, 196 F.3d at 703 (Rovner, J., concurring) ("[C]ourts have recognized that equitable considerations may require a court to look outside the formal charge where the employee has done all that she can to present the claim . . . .") Because Flores's claims for discrimination and retaliation are so "linked," in

---

[4] In her concurrence, Judge Rovner clarified that "[c]ontrary to the opinion's implications, we do not now decide whether [a] *pro se* person who signs a charge prepared by the EEOC, which leaves out critical information provided by the claimant to the EEOC in the intake questionnaire, would be similarly bound by the charge").

terms of being "related and intertwined in time, people, and substance," *see Sitar*, 344 F.3d at 726, the court concludes that Flores has sufficiently exhausted her administrative remedies to prosecute her retaliation claims in federal court.

## D. Retaliation Claims

Rule 12(b)(6) motions to dismiss test the sufficiency of the complaint, not the merits of the complaint. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). All well-pleaded allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). A motion to dismiss should be denied unless the complaint lacks enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A facially plausible claim does not need to provide "detailed factual allegations" but must allege facts sufficient "to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555.

In its reply, City Colleges argues that even if this court were to find that Flores's retaliation claims are not barred, Flores did not present *actionable* claims for retaliation. (R. 32, Def.'s Reply at 10-12.) As an initial matter, it is improper for City Colleges to raise this argument for the first time in its reply brief. City Colleges' motion to dismiss and to strike rested upon Flores's alleged failure to

exhaust her retaliation claims. (R. 24, Def.'s Mot. at 1-2, 4-7.) City Colleges cannot raise the sufficiency of Flores's allegations for the first time in a reply brief. *See Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 35 F.R.D. 435, 437 (N.D. Ill. 2006) ("'A reply brief is for replying' not for raising essentially new matter that could have been advanced in the opening brief."); *Massenberg v. A & R Sec. Servs., Inc.*, No. 10 CV 7187, 2011 WL 1792735, at *6 (N.D. Ill. May 11, 2011).

In any event, Flores has pleaded retaliation claims with a sufficient level of detail to survive a Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 678. Flores sufficiently alleged that she engaged in a protected activity and, as a result, she suffered hostility in the workplace and adverse employment actions. *See Miller*, 643 F.3d at 200; (R. 18, Am. Compl. ¶¶ 12-16, 20-26). That is all Flores is required to do at this point.

## Conclusion

For the foregoing reasons, City Colleges' motion to dismiss is denied.

ENTER:

_Young B. Kim_

**Young B. Kim**
**United States Magistrate Judge**