UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

| | |
|---|---|
| REBECCA FLORES, | |
| | No. 14 CV 7905 |
| Plaintiff, | |
| v. | Magistrate Judge Young B. Kim |
| BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 508, d/b/a CITY COLLEGES OF CHICAGO, | |
| | November 19, 2015 |
| Defendant. | |

## MEMORANDUM OPINION and ORDER

In October 2014 Plaintiff Dr. Rebecca Flores[1] filed an employment discrimination complaint against Defendant Board of Trustees of Community College District No. 508, doing business as City Colleges of Chicago ("City Colleges"). Dr. Flores alleges that in January and February 2013, City Colleges discriminated against her based on her disability, failed to provide her with appropriate accommodations, and retaliated against her for seeking an accommodation. She seeks damages for loss of income and for pain and suffering resulting from her psychological and emotional injuries. Before the court are City Colleges' motion to compel and Dr. Flores's motion for a protective order. For the following reasons, City Colleges' motion is granted and Dr. Flores's motion is denied:

---

[1] Although the caption of her complaint, (R. 18), does not note her professional title, the court will refer to Plaintiff as Dr. Flores in this opinion as this is her preference.

## Background

Accepting Dr. Flores's allegations as true for purposes of these motions, Dr. Flores suffers from Asperger's Syndrome, a form of autism that involves delays in the development of many basic skills, including an ability to socialize and communicate with others. (R. 18, Am. Compl. ¶ 2; R. 69, Pl.'s Objs. at 1.) Dr. Flores explains that this disorder can produce severe mental effects, impede verbal communication, and cause severe anxiety when the individual is placed under undue stress. (R. 70, Pl.'s Mot. at 1.)

City Colleges hired Dr. Flores to serve as Dean of Instruction at Kennedy King College in 2012. (R. 18, Am. Compl. ¶¶ 9, 11.) Dr. Flores did not experience any difficulties or barriers to performing her duties at first, but her psychological condition deteriorated following changes in her job in December 2012, including the arrival of new Vice President, Erica Holmes. (R. 69, Pl.'s Objs. at 2.) According to Dr. Flores, Holmes has an extremely difficult personality, which resulted in Dr. Flores experiencing unnecessary and unwarranted stress, which then caused her to suffer certain symptoms of her Asperger's Syndrome. (R. 18, Am. Compl. ¶ 2.) On January 16, 2013, Dr. Flores "suffered a major incident relating to her condition," causing her to seek assistance from a counselor at City Colleges' wellness center. (Id. ¶ 11.)

After her breakdown, Dr. Flores met with President Joyce Ester and Holmes to discuss her condition and to seek a reprieve from the demands of her position, including time off from work to seek treatment. (Id. ¶¶ 3, 12-13.) Dr. Flores claims

that City Colleges' officials refused to accommodate her, began fabricating workplace violations, humiliated her publicly, and plotted her dismissal. (Id. ¶¶ 2, 16, 22; R. 69, Pl.'s Objs. at 2.) For example, Dr. Flores alleges that "Holmes demanded an *ad hoc* meeting where she chastised [her] vigorously for a supposed breach of protocol that was trivial," and at another meeting, "Holmes made a caustic remark to [her] concerning her brief delay in attending the meeting, singling [her] out for reprimand." (R. 18, Am. Compl. ¶ 2.)

On February 6, 2013, during her medical leave, Dr. Flores submitted a letter to the Human Resources Director confirming the diagnosis of Asperger's Syndrome with the help of her treating psychologist. (Id. ¶ 18.) When Dr. Flores returned to work on February 11, 2013, however, Holmes had scheduled additional *ad hoc* meetings in direct contravention of the accommodation she had requested. (Id. ¶ 20.) Dr. Flores responded that she found Holmes's approach to be "hostile and intimidating and completely inconsistent with [her] recent diagnosis." (Id. ¶ 24.) She further complained about Holmes's "total disregard for . . . the accommodations [she] request[ed] and need[ed]." (Id.) As a result of these events, Dr. Flores resigned from her position on February 18, 2013. (Id. ¶ 26.)

City Colleges deposed Dr. Flores on September 11, 2015, but her deposition terminated prematurely. Although the parties dispute some of the details regarding what occurred during her deposition, they agree that there were "difficulties." (Id. at 1-2.) Each side contends that the other side's improper conduct caused these difficulties. (Id.) City Colleges argues that Dr. Flores either refused to

3

answer basic questions regarding her claims or resorted to "filibustering" them with lengthy narrative answers. (Id.) Dr. Flores counters that City Colleges refused to appreciate her disorder when examining her. (Id.)

Given their mutual dissatisfaction with how the deposition concluded, the parties filed an agreed motion for two additional hours for Dr. Flores's deposition with specific agreed upon accommodations. (Id. at 2-4.) The court granted the motion and directed the parties to complete her deposition between November 29 and December 12, 2015. (R. 64, Oct. 6, 2015 Ord.) In anticipation of the second deposition, on October 16, 2015, City Colleges moved to compel Dr. Flores to answer all questions relating to her discussions with her therapists and Dr. Flores moved for a protective order to prevent City Colleges from posing improper and embarrassing questions. (R. 70, Pl.'s Mot. at 1, 3, 5; R. 71, Def.'s Mot. at 5.)

**Analysis**

City Colleges moves this court to compel Dr. Flores to answer questions relating to subjects she discussed with her therapists, including her medical condition and her romantic and intimate relationships. In asking for this scope of inquiry, City Colleges asserts that it is entitled to explore whether Dr. Flores in fact suffers any emotional distress, and if so, to probe into the nature, extent, and effect of that distress. It also wants to explore potential stressors in Dr. Flores's life not related to her previous employment with City Colleges that might have caused and are causing her emotional distress. City Colleges explains that such inquiries are pertinent to Dr. Flores's emotional distress claim in this case because she alleges

4

more than "garden variety" emotional distress. (R. 71, Def.'s Mot. at 5; R. 73, Def.'s Opp. at 3-5.) Accordingly, City Colleges requests that the court enter an order compelling Dr. Flores to answer questions about all of the subjects she discussed with her therapists. (R. 71, Def.'s Mot. at 5.)

Dr. Flores objects to such questioning, arguing that the deposition questions should be limited and narrowly tailored to cover the four-week time period in January and February 2013 and subject matters directly related to her claims of psychological injury and emotional harm. (R. 74, Pl.'s Resp. at 1-2.) Dr. Flores also seeks to generally limit City Colleges' use of her medical history and preclude questions that relate to her personal and intimate relationships. (R. 70, Pl.'s Mot. at 3-4.) She argues that such questions are "irrelevant and improper" in this case and that City Colleges is not entitled to unrestrained access to her private affairs because such topics discussed in this context are humiliating and mainly serve to annoy and embarrass her. (Id.)

The scope of discovery under Federal Rule of Civil Procedure 26 is broad and liberal. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). A party may discover "any matter, not privileged, which is relevant to the subject matter involved in the pending action," and "[t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Nevertheless, discovery is not unlimited. Fed. R. Civ. P. 26(b)(2); *Swierkiewicz*, 534 U.S. at 512; *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 CV 5312, 2006 WL 3541933, at *1

5

(N.D. Ill. Dec. 5, 2006). The court may, for good cause, issue an order protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). A protective order limiting discovery, however, requires the movant to show good cause by submitting "a particular and specific demonstration of fact." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning are insufficient. *Id.* In deciding whether good cause exists, the court must balance the competing interests of the parties involved. *See United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006).

The court agrees with City Colleges that it is entitled to explore other potential stressors in Dr. Flores's life, but only to an extent reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). When emotional distress damages are a major component of a damages claim, a party's mental health may be a legitimate issue in the controversy. *See Bovey v. Mitsubishi Motor Mfg. of Am., Inc.*, No. 00 CV 1402, 2002 WL 820670, at *1 (C.D. Ill. Apr. 3, 2002). Moreover, when emotional injuries rise above mere humiliation and embarrassment or when a party specifically seeks damages for a psychological condition, the claim amounts to more than a "garden variety" emotional distress claim. *See Walti v. Toys R Us*, No. 10 CV 2116, 2011 WL 4715198, at *2 (N.D. Ill. Oct. 6, 2011); *Mitchell v. Iowa Interstate R.R., Ltd.*, No. 07 CV 1351, 2009 WL 2431590, at *1-2 (C.D. Ill. Aug. 5, 2009) (holding mental condition in controversy because plaintiff alleged more than mere embarrassment). In this case, Dr. Flores's

6

complaint alleges that City Colleges' "intentional and egregious" actions "severely damaged" her psychologically and has "negatively affected her earning power" to such an extent that she requires "significant psychological care" and has been "left almost destitute." (R. 18, Pl.'s Am. Compl. ¶ 5.) Also, Dr. Flores identifies "pain and suffering" as a category of damages in this lawsuit. (R. 71, Def.'s Mot. at 1.) In light of the emphasis Dr. Flores has placed on her emotional distress claim, City Colleges has adequately demonstrated the need to inquire about her medical history and her counseling sessions to explore other potential sources of Dr. Flores's emotional distress.

Dr. Flores argues that questions relating to her most private matters, including her intimate relationships, must be barred because discussing such matters in the context of this case is humiliating and embarrassing. (R. 70, Pl.'s Mot. at 3-4.) She asserts that the questions about her intimate relationships are designed to needlessly probe into her private affairs and to inflict further trauma under the pretext of "exploring [other] 'stressors' in her life." (R. 70, Pl.'s Mot. at 4; R. 74, Pl.'s Resp. at 3-4.) Dr. Flores points to the fact that her life partner, Dr. Mark Evanko, "was not involved in any event in this case" and "did not even meet [her] until approximately a year after she left [City Colleges]," and argues that questions regarding their relationship delve into "irrelevant and improper areas." (R. 70, Pl.'s Mot. at 3.)

Dr. Flores's generalized argument based on relevance and impropriety is insufficient to warrant a protective order. Whether a discovery request imposes

7

undue embarrassment or humiliation is a case- and fact-specific question. *Cf. Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 608-09 (1982). But here, Dr. Flores's arguments lack concrete examples or support. (R. 70, Pl.'s Mot. at 4.) Merely asserting that answering questions about her private affairs will be embarrassing and humiliating is insufficient to warrant a protective order. *See Hollinger Int'l Inc. v. Hollinger Inc.*, No. 04 CV 698, 2005 WL 3177880, at *3 (N.D. Ill. Jan. 19, 2005) ("generalized claims of embarrassment do not establish good cause"); *Cipollone v. Liggett Group*, 785 F.2d 1108, 1121 (3rd Cir. 1986) (stating that "an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious"). Given that extensive intrusion into the affairs of both litigants and third parties is permissible and common in modern discovery, especially in a case like this involving claims of emotional trauma, the court finds Dr. Flores's description of embarrassment and humiliation too general and lacking in specificity to warrant a protective order. *Hollinger*, 2005 WL 3177880, at *3; *see also Jenkins v. White Castle Mgmt. Co.*, No. 12 CV 7273, 2013 WL 6228938, at *1 (N.D. Ill. Nov. 26, 2013) (citations and quotation marks omitted).

The court recognizes that Dr. Flores's fragile psychological condition may heighten her level of stress when answering questions about private matters, but she does not provide the court with any legal authority entitling her to exceptional consideration based on her alleged disability or additional leniency beyond the agreed-upon accommodations which the court has made already. (See R. 64, Oct. 6,

2015 Ord.)  The court cannot ignore the fact that Dr. Flores decided to pursue this lawsuit and is in full control over the damages she seeks to recover.  There is no factual or legal basis for restricting City Colleges to inquire about her emotional state only during the four weeks in January and February 2013 unless Dr. Flores limits her emotional distress damages to that particular period.

Dr. Flores also argues that good cause exists to limit the scope of her second deposition because she says City Colleges repeatedly "exploited" her fragile psychological condition and anxiety with improper questioning and a "hidden motive."  (R. 70, Pl.'s Mot. at 2-3.)  In particular, she asserts that City Colleges employed "aggressive methods, many of which were non-verbal and unrecordable" to such an extent that "[t]he punishment [City Colleges' counsel] meted out reduced Dr. Flores to sobbing in the deposition room."  (R. 70, Pl.'s Mot. at 1.)  Also, referring to the following exchanges, among others, Dr. Flores argues that City Colleges had a "hidden motive" for asking the same question repeatedly to "create the impression that the witness was not answering" the questions:

> Q. Does this timeline contain every action by Ms. Holmes or anybody at City Colleges that supports your contention that City Colleges retaliated against you on account of your Asperger's?
> A. I am getting very tired and stressed by this process. You are asking me the same questions again and again and I do not understand why this is happening.
> Q. Because you filed this lawsuit.
>
> * * *
>
> Q. Does this timeline contain every action by Ms. Holmes or anybody at City Colleges that supports your contention that City Colleges retaliated against you on account of your Asperger's?

9

> A. This is a 7-page document that outlines the major events as they happened in chronological fashion, which is the purpose of a timeline.
> Q. So are minor --
> A. That is my answer to your question.
> Q. Okay. So are minor events omitted?
> A. This is a 7-page document that outlines the major events as they happened in chronological fashion, which is the purpose of a timeline. I have answered your question.
>
> * * *
>
> Q. Does this timeline reflect every event or action by Ms. – involving Ms. Holmes or by Ms. Holmes or anyone else at City Colleges relating to your allegation that you were denied reasonable accommodation?
> A. This is a 7-page document that outlines the major events as they happened in chronological fashion, which is the purpose of a timeline. I have answered your question.

(R. 70, Pl.'s Mot. at 2-3 (quoting Flores Dep. 149:6-13; 150:10-23; 151:14-152:8).) She also adds that City Colleges' counsel "admitted he had a hidden motive." (Id. at 3.) City Colleges refutes these allegations.

Having reviewed the transcript and video clips of Dr. Flores's first deposition, the court does not agree with her characterization. Even if Dr. Flores's allegations were true, City Colleges aptly points out that a protective order on this basis alone is not necessary because her second deposition is scheduled to take place under the supervision of a Special Master who will be able to police any unreasonable behavior. The court also finds that the above referenced exchange was a byproduct of Dr. Flores not answering the question. The answer, at least from the court's viewpoint, should have been "no." While good cause "is difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take

10

judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). Here, the above type of exchange, despite some tension, does not rise to the level of good cause to warrant a protective order. And again, the Special Master will be able to assist the parties to complete the second deposition without unnecessary delay or tension.

The court finds, however, that Dr. Flores's perception that City Colleges used improper questioning at her first deposition to harass, annoy, and bully her rather than to discover information is not a product of her imagination. Dr. Flores's deposition *started* with the following exchange between her and City Colleges' counsel before her attorney intervened:

> Q. Ms. Flores, please –
> A. It is Dr. Flores.
> Q. Please state your name and spell your name for the record.
> A. Doctor, D-o-c-t-o-r, Rebecca, R-e-b-e-c-c-a, Flores, F-l-o-r-e-s.
> Q. Does the word "doctor" appear on your birth certificate?
> A. I hold a Ph.D. and I would ask you to respect my credentials.
> Q. Why do you insist on being called doctor?
> A. Because that is my title, not Ms. You asked me to speak the truth. That is the truth, sir.
> Q. Do you insist on using the title doctor because you believe that you are more intelligent than the average person?
> A. I use the title doctor because it is a title to which I am entitled and Ms. is incorrect.
> Q. Do you use the title because you think you are better educated than the average person?
> A. I use the title doctor because it is a title to which – it is a title to which I am entitled having earned the degree of Ph.D.
> Q. Most American who hold the Ph.D., and myself included, do not use the title doctor. And my experience is that people who do do so because they are insecure. Is that your case?

11

(R. 70, Pl.'s Mot. at 1-2 (quoting Dr. Flores Dep. 4:10-5:12)).) This exchange was unwarranted and such pettiness and incivility reflect poorly on City Colleges, City Colleges' counsel, and the legal profession.

Dr. Flores also argues that she is entitled to a protective order because she already produced her medical records to City Colleges and asserts that those records should suffice to satisfy City Colleges' questions regarding her emotional state. (R. 74, Pl.'s Resp. at 5.) She believes that City Colleges has not made a reasonable effort to tailor the questions to the proper time period or to claims related to Dr. Flores's psychological injury or emotional harm. (Id. at 1-2.) But City Colleges' possession of medical records does not necessarily bar or render superfluous additional discovery to further develop its defense. *See E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 436 (S.D. Ind. 2010) (holding that a party is entitled to seek additional material should discovery suggest they are probative of a claim or defense). Moreover, the court has no business micromanaging how many questions a lawyer should ask on a topic or how much time or energy should be expended on a certain aspect of a case, as long as the questions are designed to lead to discoverable information. *See Flentye v. Kathrein*, No. 06 C 3492, 2007 WL 2903128, at *3 (N.D. Ill. Oct. 2, 2007) (noting that the court cannot regulate parties' thoughts, emotions, or animus during discovery outside of the metes and bounds of discovery provisions of the Federal Rules). The parties are equally free to investigate information pertinent to the case within the confines of the discovery provisions, and the court rejects Dr. Flores's contention that the

deposition questions need to strictly adhere to the four-week period directly related to her claims. Ultimately, the burden lies with Dr. Flores to justify a protective order by showing good cause with "a particular and specific demonstration of fact." *See Gulf Oil Co.*, 452 U.S. at 102 n.16. She has not done so here.

## Conclusion

For the foregoing reasons, City Colleges' motion to compel is granted and Dr. Flores's motion for a protective order is denied. City Colleges is permitted to investigate the subject matters Dr. Flores discussed with her therapists, including Steven Cromer. However, the testimony of Dr. Flores from her second deposition is to be treated as confidential and "Attorney's Eyes Only." The court agrees with Dr. Flores that while Rule 26 permits broad discovery, discovery should not unnecessarily intrude on a person's legitimate privacy interests, *see E.E.O.C. v. Area Erectors, Inc.*, 247 F.R.D. 549, 553 (N.D. Ill. 2007). Given the private nature of the information being sought by City Colleges and given that the disclosure of this information to others may not be necessary in defending this case, such limitation is not an undue burden on City Colleges. The appointed Special Master may control the proceeding at the second deposition as he sees fit.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

13